IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:21-CV-00522

| | |
|---|---|
| MOHAN N. HARWANI, M.D.,<br><br>  Plaintiff,<br><br>  v.<br><br>THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION, d/b/a CONE HEALTH MOSES CONE HOSPITAL or MOSES CONE HOSPITAL and JONATHAN J. BERRY, M.D.,<br><br>  Defendants. | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br><br>**[REDACTED]** |

Defendants The Moses H. Cone Memorial Hospital Operating Corporation d/b/a Cone Health, or Moses Cone Hospital ("Cone Health") and Jonathan J. Berry, M.D. ("Dr. Berry") (collectively, "Defendants") file this Brief supporting their Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## NATURE OF THE MATTER BEFORE THE COURT

After pursuing multiple internal processes at Cone Health, including an evidentiary fair hearing and appellate procedure, Plaintiff, Dr. Mohan N. Harwani, M.D. ("Dr. Harwani" or "Plaintiff") brought this action for race discrimination under 42 U.S.C. § 1981 and other supplemental state law claims on June 24, 2021. [Doc. #1].

Defendants moved to dismiss the Complaint [Doc. #12], relying in part on the decision of *Nadendla v. Wake Med*, 2021 WL 105621 (E.D.N.C. Feb. 23, 2021), which

was on appeal to the Fourth Circuit. [Doc. #12]. On January 21, 2022, the Fourth Circuit affirmed the Eastern District of North Carolina's opinion. *Nadendla v. Wake Med*, 24 F. 4th 299 (4th Cir. Jan. 21, 2022). On March 1, 2022 this Court ordered that, given the *Nadendla* opinion, Plaintiff should be given the opportunity to amend the complaint and the issues before the Court should be re-briefed. [Doc. #20]. Plaintiff was given until March 29, 2022 to file the Amended Complaint, with responsive pleadings from Defendants due on April 19, 2022.

## STATEMENT OF FACTS[1]

Cone Health is committed to providing exceptional health care services with patient safety a paramount concern. The Amended Complaint establishes that multiple different individuals and committees made the decision to ▮▮▮▮▮ only Dr. Harwani's interventional cardiology privileges pursuant to the 2019 Medical Staff Bylaws ("Bylaws"). [Doc. #22 ¶¶ 14-16](*See* **Exhibit A** to Defendants' Motion to Dismiss, Selected Pertinent Bylaws Provisions, cited herein as "Bylaws").[2] Due to the number of

---

[1] For purposes of a Rule 12(b)(6) motion, the factual allegations of the Complaint are taken as true; however, if there are more likely explanations for the facts, a court may conclude that the factual analysis provided is not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 681-82 (2009).

[2] A court may consider documents outside of the complaint on a motion to dismiss where (1) the document was integral to the complaint, (2) the document was explicitly relied on in the complaint, and (3) the document's authenticity is not disputed. *Phillips v. LCI Intern, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Because the Bylaws are integral to the Amended Complaint, Dr. Harwani relies on the Bylaws extensively, and their authenticity is not disputed, they are appropriately considered in ruling on a Rule 12(b)(6) motion to dismiss. A complete copy of the Bylaws has been filed as [Doc. #27-1].

2

individuals involved in the decision-making process, the facts alleged in the Amended Complaint do not establish a causal connection between the decision to ███████ Dr. Harwani's privileges and the alleged discriminatory conduct forming the basis of Plaintiff's claims. The more plausible, non-race-based explanation for the difficult decision to ███████ Dr. Harwani's interventional cardiology privileges is ███████ and ███████ ███████ considerations.

## A. Cone Health's Medical Staff Bylaws

The Amended Complaint alleges that the Bylaws formed a contract between Cone Health and Plaintiff. [Doc. #22 ¶ 15]. Under the Bylaws, Dr. Harwani committed to the confidentiality of credentialing, peer review and corrective action processes, information, and materials. (Bylaws §§ 5.2 (b)(1), 5.3, 5.7, 13.3, pp. 28–30, 36, 99). Plaintiff also affirmed the provisions assuring immunity and waived potential claims against participants in these processes who made the challenged decisions. (Bylaws §§ 5.2(b), Article 13 and 14.8(d), pp. 28-29, 98-100, 112). The immunity can only be overcome if a Representative acts with malice, which is defined as "the dissemination of a knowing falsehood, or of information with a reckless disregard for whether it is true or false." (Bylaws § 13.1(b), p. 98).

### 1. Peer Review

The Amended Complaint alleges that Dr. Harwani was on ███████ and the subject of ███████. [Doc. #22 ¶ 46]. The Peer Review Committee has the authority

3

to place a practitioner under ██████████ for ████████████ and to seek external ████

████. (Bylaws, § 10.16(c), p. 76).

### 2. The Medical Executive Committee ("MEC") and ██████ Action

The Complaint references Dr. Harwani's privileges being placed under

████████████████. [Doc. #22 ¶ 53]. The President of the Medical Staff has the

authority to issue a ████████████████ to a medical staff member when determining

in good faith that failure to take such action may result in ████████████ to the ████ of

any individual. (Bylaws § ████████████). There is no requirement under the Bylaws

that peer review or an investigation occur before imposing a ████████████████.

(Bylaws § ████████████). Delay first to undertake such processes would defeat the

purpose of ████████████ The Bylaws afford protection to the practitioner by

requiring an immediate ████████ and further consideration and action ████████████.

(Bylaws §§ ████████████████). The MEC has discretion as to who may serve on

the ████████ committee. (Bylaws § ████████████). The Complaint alleges that a

medical staff subcommittee ████████████████ Dr. Harwani performed on Saturday,

July 13, 2019. [Doc. #22 ¶ 65].

### 3. The Fair Hearing Process

The Complaint alleges that Dr. Harwani requested and received a fair hearing. [Doc.

#22 ¶¶ 87, 92-93]. Under the Bylaws, "none of the members of the Hearing Committee

shall be in direct economic competition with the Practitioner who is the subject of the

4

hearing." (Bylaws § 14.3(c), pp. 104-05). Because Dr. Harwani practices cardiology, cardiologists on the medical staff would not be included on the Hearing Committee.

The Practitioner is required to attend and may be represented by counsel at the fair hearing. (Bylaws § 14.4(c), p. 105). The Practitioner and the MEC are invited to present evidence and to call, examine, and cross-examine witnesses. (Bylaws § 14.4(e), pp. 105-06.) The Hearing Committee may consider any pertinent material contained in Hospital files and all other information that could be considered in connection with applications for appointment or reappointment to the Staff and/or for clinical privileges. (Bylaws § 14.4(g), p. 106).

The Hearing Committee is required to issue a written report of its findings and recommendations to the Hospital body that made the decision (here the MEC). (Bylaws § 14.5(a), p. 107). The MEC has the discretion to affirm, modify, or reverse the recommendation of the Hearing Committee. (Bylaws § 14.5(b), pp. 107-08). The Board of Trustees may follow or reject the MEC recommendation or refer the matter back to the MEC for reconsideration. (Bylaws § 14.5(c)(2)(B), p. 108).

### 4. *The Appellate Process*

The Amended Complaint alleges that Dr. Harwani pursued appellate review. [Doc. #22 ¶ 104]. The Board has discretion to designate an Appellate Review Committee to consider the appeal. (Bylaws § 14.6(d), p. 109). The Appellate Review Committee recommends that the Board affirm, modify, or reverse the action, or refer the matter back

5

to the Hearing Committee for further review. (Bylaws § 14.7(j), p. 111). The Board has the ultimate authority to affirm, modify, or reverse the action being appealed. (*Id.*).

**B.    The ███████ and ███████ of Dr. Harwani's Privileges**

The peer review and the corrective action processes have separate decision-making bodies. The Amended Complaint alleges that Dr. Berry served as the Chair of the Peer Review Committee and the Chief of the Cardiovascular Section. [Doc. #22 ¶ 2]. Separately, the individuals involved in the ███████ of Dr. Harwani's interventional privileges included the Medical Director, Chief of Staff, Medical Executive Committee ("MEC"), and the Board of Trustees. [Doc. #22 ¶ 3].

**1.    2017 ███████**

The Amended Complaint details the ██ year history of questions concerning Plaintiff's ███████, including exercising ███████████████████ ███████████ with nurses and staff. [Doc. #22 ¶ 17]. In 2017, Dr. Berry raised ███████ with the MEC and the Peer Review Committee [Doc. #22 ¶ 18]. The Amended Complaint alleges that Dr. Swords and Dr. Hongali ███████ Dr. Harwani's interventional cardiology privileges on April 15, 2017 because of concern for ███████. [Doc. #22 ¶ 22]. Dr. Berry was not involved in the meeting leading to the ███████ of privileges. [Doc. #22 ¶ 21]. On April 17, 2017, the MEC voted to continue the ███████ of Dr. Harwani's interventional privileges. [Doc. #22 ¶ 23]. On April 26, 2017, the MEC voted to continue Plaintiff's ███████ during their ███████. [Doc. #22 ¶ 28]. On May 11, 2017, the ███████ Subcommittee sought ███████ of

6

██ of Plaintiff's cases, which was reflected in letters dated June 23, 2017. Based on these findings, the MEC ██████ Dr. Harwani's interventional cardiology privileges on July 7, 2017. [Doc. #22 ¶¶ 34].

There are no allegations connecting the actions of the MEC, Dr. Swords, Dr. Hongali or the ████████ Subcommittee to Dr. Berry other than his alleged "unfounded, vindictive campaign against Dr. Harwani" through the peer review process. [Doc. #22 ¶ 26]. Furthermore, the Peer Review Committee, does not determine ████████ ████████ of privileges. There are also no allegations that the MEC, Dr. Swords, or Dr. Hongali acted with discriminatory intent, bias, malice, or bad faith. Rather, Plaintiff baldly alleges, "for reasons that can only be explained as unreasonable and discriminatory, Dr. Berry and Moses Cone waited and did not ████ Dr. Harwani's privileges for over seven weeks after receiving the ██████████████████████." [Doc. #22 ¶ 36]. But the Amended Complaint lacks specific factual allegations of discriminatory intent by the individuals and committees that actually ██████ Plaintiff's privileges or how any action taken by these individuals violates the provisions of the Bylaws. [3]

The Amended Complaint does contain the conclusory allegation that non-white doctors were treated differently by the peer review process, including Dr. Ajay Kadakia, a

---

[3] In fact, the Amended Complaint alleges facts that are contrary to a finding of discriminatory intent. In 2001-2002, 2009-2010, and 2017-2018, the ██████████ ████████ at the direction of Dr. Berry in 2017, found that Dr. Harwani ██████ Doc. #22 ¶ 46].

cardiologist of Indian descent. [Doc. #22 ¶ 49]. But there are no facts that detail who was involved in this decision or what the alleged discriminatory actions were. Nor is there any allegation that Dr. Berry was involved in the decision to ███████ Dr. Kadakia's privileges.

## 2. *2019* ███████████ *of Privileges*

On Saturday, July 13, 2019, Dr. Harwani decided to perform an interventional procedure ███████████ the patient was experiencing a ████████████████████████ ███████████████. [Doc. #22 ¶ 53]. This ████ decision resulted in a five-hour procedure and permanent placement of five stents in her heart, which resulted in ██████████. [Doc. #22 ¶¶ 53, 105].

After the procedure, Dr. Martin Webb, President of the Medical Staff, placed Plaintiff on a ████████████████████. [Doc. #22 at ¶ 53]. On July 15, 2019, the MEC decided to ████████ Dr. Harwani's diagnostic and interventional privileges while performing an ████████████ through a subcommittee. [Doc. #22 ¶ 65]. On July 25, 2019, the MEC ████████ Plaintiff's interventional cardiology privileges but ████████ his diagnostic privileges based on information provided by the ████████████ Subcommittee.[4] [Doc. #22 ¶ 83]. Dr. Harwani requested and received a Fair Hearing. [Doc. #22 ¶ 87]. The Hearing Panel was comprised of five physicians and there is no allegation that Dr. Berry was involved. [Doc. #22 ¶ 93]. The Hearing Panel ████████ the privileges

---

[4] The MEC's ████████████ of Dr. Harwani's diagnostic privileges is a fact that supports non-discriminatory intent.

8

████████ but suggested a path for ████████████.[5] [Doc. #22 ¶ 101].  The MEC decided to ███████ Dr. Harwani's interventional cardiology privileges. [Doc. #22 ¶ 102]. The Board of Trustees ███████ the MEC decision and Plaintiff appealed.  [Doc. #22 ¶ 103]. The Appellate Review Committee ██████ the Board of Trustees' decision to ████████ privileges.  [Doc. #22 ¶ 105].  On June 26, 2020, the Board of Trustees voted to ██████ the ████████ of Dr. Harwani's interventional privileges.  [Doc. # 22 ¶ 106].

There are no allegations regarding the 2019 ████████ connecting the actions of Dr. Webb, the MEC, ████████ Subcommittee, the fair hearing process, the Hearing Panel, the Board of Trustees, or the Appellate Review Committee to Dr. Berry other than the allegation that Dr. Berry spoke to Dr. Webb and initially convinced him to ████████ ███████ Dr. Harwani's privileges "upon information and belief."  [Doc. #22 ¶ 63].  The decision to ███████ Plaintiff's privileges was made by multiple individuals over multiple committees.  There are also no allegations that Dr. Webb, the MEC, the ████████ Subcommittee, the fair hearing process, the Hearing Panel, the Board of Trustees, or the Appellate Review Committee acted with discriminatory intent, bias, malice, or bad faith.

Plaintiff makes conclusory allegations of "racial animus," claiming that the Appellate Review Committee ignored the information provided by his experts and that other non-white doctors who had ████████████████ were not treated similarly.

---

[5] The MEC's suggestion of a path to ████████ is a fact that supports non-discriminatory intent.

[Doc. # 22 ¶¶ 77, 78, 80-81, 105]. The Amended Complaint fails to allege any facts establishing that those comparators are similarly situated, that the alleged ███████ █████ was made on similar facts, or that the decision ████████████████ against the other individuals was made by the same individuals as those involved with Plaintiff's case.

### C.      The Northwood Property

The Amended Complaint alleges that a real estate brokerage firm "working directly for Moses Cone" sent two letters to Dr. Harwani asking if he would be interested in selling his property to Cone Health on March 5, 2015 and again three years later on August 29, 2018. [Doc. #22 ¶¶ 109-110].[6] Copies of these letters are attached as **Exhibit B**.  Plaintiff pleads, in the alternative to the racial animus and discrimination, that Cone Health ███████ his interventional cardiology privileges to unfairly influence him to sell his commercial property.  [Doc. #22 ¶ 166].

## QUESTIONS PRESENTED

I.      Should Plaintiff's 42 U.S.C. § 1981 racial discrimination claim against Defendants be dismissed because the Amended Complaint does not establish that race is the "but-for" cause of the ██████ of Dr. Harwani's privileges?

II.     Should all claims against Defendants be dismissed pursuant to peer review immunity?

III.    Should Plaintiff's supplemental state law claims be dismissed?

---

[6] Notably, these facts are not pled in the alternative.

## ARGUMENT AND CITATIONS OF AUTHORITY

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted if, assuming the facts in the complaint are true, a plaintiff has not alleged facts that would entitle him to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, a Court is not required to assume that a plaintiff's factual allegations are true if the factual allegations are conclusory or speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted).

**I.**     **Plaintiff's 42 U.S.C. § 1981 Racial Discrimination Claim Should Be Dismissed Because the Amended Complaint Does Not Establish That Race is the "But-For" Cause of the ███████ of Plaintiff's Privileges.**

To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). A plaintiff must also show that the interference with a contractual interest would not have happened but for the Plaintiff's race. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

**A.**     **Race was not the but-for cause of the ███████ of privileges.**

The Fourth Circuit's decision in *Nadendla v. Wake Med*, 24 F. 4th 299 (4th Cir. Jan. 21, 2022) is controlling authority. Similar to Dr. Harwani's allegations, Dr. Nadendla

11

alleged facts contradicting each of the allegations of clinical concerns by WakeMed and made general allegations that the hearing process was unfair to her. *Id.* at 302-303. Regarding race specifically, Nadendla alleged that "WakeMed similarly forced out one or more other physicians of Indian origin and removed their clinical privileges unjustifiably"; that she was treated differently than similarly situated Caucasians; that there was a double standard for minority physicians in the peer review process; and that the reasons offered by WakeMed as to her disparate treatment were pretextual. *Id.* at 305.

The Fourth Circuit upheld the dismissal of the § 1981 claim because Dr. Nadendla did not plead details about these conclusory allegations:

> For example, she does not give any facts to suggest that WakeMed's treatment of other physicians of Indian descent was unjustified. She does not provide any details about how the peer review process for physicians of Indian descent was different from the process for white physicians either. She does not even describe how she was treated differently than similarly situated white physicians.

*Id.* at 305-06.

The Amended Complaint suffers from similar deficiencies. Plaintiff focuses on the end result – that Caucasian physicians allegedly did not █████ their privileges while Indian physicians did. He alleges that (1) Caucasian physicians ████████████████ and these privileges were not ████████ and (2) that Dr. Kadakia (of Indian descent) was also subjected to scrutiny by the ████████████ and his privileges were ████████. [Doc. # 22 ¶¶ 49, 77-78, 80-81]. But the Amended Complaint does not explain how the alleged differential treatment towards those physicians was unjustified or how the Bylaws were

12

applied differently to non-white physicians. The Amended Complaint just asks the Court to conclude that because white physicians allegedly ███████████ and their privileges were not ████████ the Court must also conclude that the ████████ of Dr. Harwani's privileges due to a ██████████████ was racially motivated. Furthermore, there are no facts alleged about Dr. Kadakia's ████ of privileges or that it was in any way related to a █████████████. Significantly, there are no factual allegations that support that Defendants' conduct violated the Bylaws or that the Bylaws were applied differently to non-white physicians. The Amended Complaint just asks the Court to jump to a discrimination conclusion based on the ████ of privileges.

In contrast to Plaintiff's desired inference that race was the but for cause of decisions on his privileges, the allegations establish that multiple individuals on multiple committees evaluated and made decisions about Dr. Harwani and the alleged the comparator physicians. There is no allegation that Dr. Berry or members of the MEC, █████████ Subcommittee, Hearing Panel, Board of Trustees, or Appellate Review Committee were also involved in these other comparator physician cases. It is not plausible that all of the individuals involved in all of these committees would harbor racial animus towards Indian physicians, and such an inference would be unreasonable. Plaintiff just asks this court to assume that race was the "but for" cause.

The Fourth Circuit also clarified that simply pleading that "but for Plaintiff's race, [WakeMed]'s wrongful conduct [that] Plaintiff alleged herein would not have occurred" was insufficient to establish but for causation. *Nadendla*, 24 F. 4th at 306. Similarly, Dr.

13

Harwani baldly alleges that Plaintiff's race was the "but-for" factor in Defendants' decision to terminate his privileges because other non-white doctors were treated differently. [Doc. #22 ¶¶ 119, 122, 151, 154, 166]. But there are no facts establishing the alleged treatment of these other comparator physicians or that the decisionmakers were the same or how the comparator physicians were actually treated differently according to the Bylaws. Rather, Plaintiff merely recites the elements of a cause of action without specific supporting facts. *Id.*

Finally, Plaintiff cannot overcome the fact that the Amended Complaint includes alternative, non-race-based explanations for the conduct at issue: (1) Dr. Harwani's long history of ▮▮▮▮▮▮ over the course of ▮ years and (2) financial motivations. Racial animus cannot be the "but for cause" of the alleged conduct when an alternative, non-race-based explanation is included on the face of the Amended Complaint. *See Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020). Plaintiff essentially asserts a mixed-motive claim of discrimination (in a conclusory fashion)—but "plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision." *See id.*

This is not to say that a plaintiff cannot plead claims in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2). But a plaintiff cannot allege a new set of facts, that are not pled in the alternative, that provide an alternative motivation for the factual allegations that negate the "but for" causation standard articulated in *Comcast* and *Nadendla*. *See, e.g., Allums v. Helix Sys., Inc.*, No. 2:15-CV-1803-WMA, 2016 WL

14

2851318, at *1 (N.D. Ala. May 16, 2016) (noting that alleging a retaliation claim in addition to race and sex discrimination claims negated the essential requirements of but-for causation and subjected the retaliation claim to dismissal); *Hendon v. Kamtek, Inc.*, 117 F. Supp. 3d 1325, 1334 (N.D. Ala. 2015) ("By alleging as fact the existence of a separate proscribed contributing motivation, Hendon concedes that age was not the but-for reason for her termination.").

## II. <u>All Claims Against Defendants Should Be Dismissed Pursuant to Immunity and Waiver of Claims</u>.

### A. Plaintiff relinquished all claims by committing to follow the Bylaws.

Plaintiff asserts that the Bylaws are an enforceable contract.[7] [Doc. #22 ¶ 15]. To be a contract, Plaintiff must have agreed to the Bylaws' terms. Under the Bylaws, Plaintiff agreed to release and make immune the "Corporation" and any "Representative" in relation to "any statement, recommendation, or other action or omission, taken or made…without malice." (Bylaws § 13.4(a), p. 99). The Bylaws defines a "Representative" as any member, officer, service, section, or committee of the Cone Health medical staff, which includes Dr. Berry, and the Corporation is defined as Cone Health (Bylaws § 13.1(c), p. 98). Plaintiff has, therefore, waived any claims against Defendants under the Bylaws, unless Plaintiff can allege Defendants acted with malice.

---

[7] Defendants accept, but do not concede, this is true for the purposes of the Motion to Dismiss.

15

"Malice", as defined by the Bylaws is "the dissemination of a knowing falsehood, or of information with a reckless disregard for whether it is true or false." (Bylaws § 13.1(b), p. 98). The Amended Complaint does not allege that Cone Health or Dr. Berry spread a knowing falsehood or acted with a reckless disregard for the truth. Instead, Plaintiff generally alleges "[i]t is Plaintiff's belief and understanding that Defendants acted in bad faith and with malice in ███████████████ his privileges…" [Doc. # 22 ¶ 127]. Plaintiff's lone malice allegation fails to adhere to the malice standard and, cannot overcome the contractual immunity afforded by the Bylaws.

**B. The applicable law provides immunity for Defendants.**

North Carolina General Statute § 131E-95(a) provides immunity from liability for physicians appointed to a medical review committee. The immunity applies "in *any* civil action on account of *any* act, statement or proceeding undertaken, made or performed within the scope of the functions of the committee." The immunity applies unless the member acts with malice or fraud.

Malice has been defined in this context as "[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." *Philips v. Pitt County Mem. Hosp., Inc.*, 222 N.C. App. 511, 525, *writ denied, review denied, appeal dismissed*, 366 N.C. 410, 734 S.E.2d 862 (2012). To plead malice, a plaintiff must allege specific actions that show an issue as to the defendant's motive. *See Huntley v. Burris*, 2019 WL 12339733, at *2 (M.D.N.C. Mar. 4, 2019).

16

The Amended Complaint does not allege specific facts demonstrating an unjustified and intentional doing of a wrongful act with intent to inflict injury by Dr. Berry or Cone Health, other than asking the Court to speculate as to a racially discriminatory motive. The only allegation of supposed malice is a single conclusory allegation saying, "[i]t is Plaintiff's belief and understanding that Defendants acted in bad faith and with malice in ███████████████████ his privileges to perform interventional procedures." [Doc. # 22 ¶ 127]. There are no allegations that Dr. Webb, the MEC, the ██████████ Subcommittee, the Hearing Panel, the Board of Trustees, or the Appellate Review Committee acted with discriminatory intent, bias, malice, or bad faith. Plaintiff fails to make such allegations and cannot overcome the immunity afforded by § 131E-95(a).

Similarly, the federal Health Care Quality Improvement Act ("HCQIA") provides immunity to hospitals and doctors, participating in the peer review process. *See* 42 U.S.C. § 11111; *Braswell v. Haywood Reg'l Med. Ctr.*, 352 F. Supp. 2d 639, 651 (W.D.N.C. 2005). While the HCQIA may not apply to Plaintiff's § 1981 claim, it applies to his other claims and does not nullify § 131E-95. *See id.* As a result, pursuant to § 131E-95 and the HQCIA, all claims against Defendants should be dismissed. *See Philips*, 222 N.C. App. at 525–26, 731 S.E.2d at 472.

17

### III. Plaintiff's Supplemental State Law Claims Should Be Dismissed.[8]

**A. The facts alleged do not support a breach of contract claim.**

Plaintiff clarifies in his Amended Complaint that his breach of contract claim and alleged violations of § 131E-85 are not separate claims for relief but are the state-law corollary claims that are derived from the 42 U.S.C. § 1981 claim. [Doc. #22 ¶ 154]. However, Plaintiff cannot simply rely upon allegations in support of his § 1981 claim to satisfy separate causes of action with their own pleading standards under state law.

#### 1. Claims against Dr. Berry

The Amended Complaint states the "Bylaws…form a valid and enforceable contract between Dr. Harwani and Moses Cone Hospital," not Dr. Berry. [Doc. #22 ¶ 15]. Dr. Berry is not alleged to be a party to the Bylaws and, therefore, Plaintiff cannot maintain a breach of contract action against him. *See Howe v. Links Club Condo. Ass'n*, 263 N.C. App. 130, 139, 823 S.E.2d 439, 448 (2018).

#### 2. Claims against Cone Health

To sufficiently allege a breach of contract action against Cone Health, Plaintiff must allege the specific provisions of the Bylaws that were breached and facts showing how the Bylaw provisions were violated. *Dillon v. Leazer Grp., Inc.*, 374 F.Supp. 3d 547, 555 (E.D.N.C. 2019). While a plaintiff, at the very least, must identify the specific provisions

---

[8] Because the 42 U.S.C. § 1981 claim should be dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. *See, e.g., Nadendla*, 2021 WL 1056521, at *3.

18

breached, it is insufficient to merely recite them, rather a plaintiff must allege facts that show how the defendant did not comply with the provisions. *Sports Med. Props., LLC v. Talib*, 2019 WL 3403372, at *3 (W.D.N.C. July 26, 2019).

The Amended Complaint is devoid of a single reference to any Bylaw provision. Furthermore, no paragraph in the Amended Complaint describes how an applicable Bylaw provision was violated. Instead, Plaintiff generally asserts Cone Health violated the contract by ████████ his privileges or he alleges actions that are not prohibited by the Bylaws but contends they nevertheless constitute breach.[9]

### i. The ████████ Process

The Amended Complaint identifies alleged concerns regarding Cone Health's 2019 ██████████████████████████████ of Dr. Harwani's privileges. [Doc. #22 ¶¶ 63, 67-70]. Plaintiff's specific allegations either confirm Cone Health's compliance with the Bylaws or describe an issue that is not required by the Bylaws. Rather, Plaintiff generally alleges the ████████ was a "sham" and that he was denied "due process" without describing how Cone Health deviated from a single Bylaw. [Doc. #22 ¶¶ 65, 69, 84].

A comparison of Plaintiff's allegations to the relevant Bylaws provisions reveals that Cone Health did not violate the Bylaws, nor does Plaintiff allege specific sections of the Bylaws that were violated. Plaintiff's privileges were ████████████████ by the

---

[9] Plaintiff baldly alleges that Defendants violated the Bylaws [*see* Doc. #22 ¶¶ 16, 96, 128], but he does not identify a section of the Bylaws that has been violated or provide factual allegations that support a breach.

19

President of the Medical Staff [Doc. #22 ¶ 63], as allowed under Bylaw § ███. (Bylaws § ██████████ The MEC ████████████████████ of Plaintiff's privileges and appointed an ██████ Subcommittee [Doc. #22 ¶ 65] as they were permitted to do. (Bylaws § ████████████ The ███████ Subcommittee, including one cardiologist [Doc. #22 ¶¶ 65, 67], included physicians appointed by the MEC, who considered all information available to them as allowed under Bylaw § ██.[10] The ██████████ Subcommittee conducted ████████████, which included seeking clinical opinions from seven interventional cardiologists on the medical staff. [Doc. #22 ¶¶ 66]. The ████████ Subcommittee interviewed Plaintiff, [Doc. #22 ¶ 67], as required under Bylaws § ██. The MEC notified Plaintiff of its decision to continue the ████████ of his interventional privileges, [Doc. #22 ¶ 65], as required by Bylaw § ████

### ii.  *The Fair Hearing and Appellate Review*

Dr. Harwani alleges that the Hearing Panel and Appellate Review Committee considered evidence beyond the July 13, 2019 case, failed to agree with the conclusions drawn by his experts, that Dr. Berry did not testify at the fair hearing, and that he was not allowed access to external reviewers. [Doc. #22 ¶¶ 88-89, 93, 97-100]. But Dr. Harwani fails to explain how any of these facts actually violate the Bylaws.

---

[10] The ████████ Subcommittee is not required to have a certain number of cardiologists, and a cardiologist is not required to be present for Plaintiff's interview. The subcommittee is also able to consider whatever information it deems appropriate. *Compare* [Doc. #22 ¶¶ 65, 67] *with* Bylaw § ██

20

Instead, the allegations show Plaintiff requested and received a fair hearing as required under Bylaw § 14.4. [Doc. #22 ¶¶ 87, 92-93]; (Bylaws § 14.4, pp. 105-107). In accordance with Bylaw § 14.4, Cone Health selected a five-member Hearing Panel that did not include any economic competitors. [Doc. #22 ¶ 93]. As required by Bylaw § 14.4, Plaintiff had the opportunity to present evidence and call witnesses that the Hearing Panel had the discretion to evaluate and weigh. [Doc. #22 ¶¶ 94-96]. The Hearing Panel, as provided under Bylaw § 14.4(g), considered all information that they, at their discretion, believed was pertinent to Plaintiff's applications for appointment or reappointment to the Staff and/or for clinical privileges. [Doc. #22 ¶¶ 97-98]. The Hearing Committee issued a report with findings and a recommendation, as provided under Bylaw § 14.5(a), and the MEC, pursuant its discretion under Bylaw § 14.5(b), ███████████████ ████████████████████████████████████████████ of Plaintiff's privileges. [Doc. #22 ¶¶ 100-04]; (Bylaws § 14.5(a)-(b), pp. 107-08). Plaintiff was afforded an opportunity to appeal, as required by Bylaw § 14.6, which he exercised. [Doc. #22 ¶ 104]; (Bylaws § 14.6, p. 109). The Appellate Committee considered evidence in accordance with Bylaws § 14.7(e) and voted to █████ the MEC's decision pursuant to Bylaw § 14.7(j). [Doc. #22 ¶ 105]; (Bylaws § 14.7(e), (j), pp. 110-11). The Board of Trustees ██████ that decision as provided under Bylaw § 14.7(j). [Doc. #22 ¶ 106].

Thus, the Amended Complaint fails to allege any breaches of the Bylaws in Cone Health's decision to ██████ Dr. Harwani's interventional cardiology privileges.

21

**B. The facts alleged do not establish a violation of N.C. Gen. Stat. § 131E-85.**

A hospital should grant or deny medical staff privileges "based upon the applicant's education, training, experience, demonstrated competence and ability, and judgment and character of the applicant, and the reasonable objectives and regulations of the hospital." N.C. Gen. Stat. § 131E-85(a). However, "the right to enjoy staff privileges is not absolute, but is subject to the standards and objectives set by the hospital's governing body." *Claycomb v. HCA-Raleigh Cmty. Hosp.*, 76 N.C. App. 382, 385, 333 S.E.2d 333, 336 (1985). As long as the hospital's criteria are reasonably related to operation of the hospital and fairly administered, the courts should not intervene. *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C App. 414, 449, 293 S.E.2d 901, 922 (1982); *Lohrmann v. Iredell Mem. Hosp.*, 174 N.C. App. 63, 77, 620 S.E.2d 258, 266 (2005).

The Amended Complaint fails to state a claim under N.C. Gen. Stat. § 131E-85(a) because it fails to identify how Cone Health's Bylaws fail to comply with state law or that Cone Health failed to follow its own Bylaws. *See Weston v. Carolina Medicorp*, 102 N.C. App. 370, 379-80, 402 S.E.2d 653, 659 (1991); *Cameron*, 58 N.C App. at 449, 293 S.E.2d at 922. Rather, Plaintiff argues that the ████████ of his privileges was not based on any "credible or reliable evidence" or that it was "arbitrary and capricious" because he does not like the decision that multiple individuals and committees separately made. [Doc. #22 ¶¶ 98, 105, 155]. His conclusory allegations cannot withstand a motion to dismiss.

### C. The facts alleged do not support an unfair and deceptive trade practices (UDTP) claim.

Plaintiff pleads, in the alternative, that he was treated differently because he was a solo practitioner and Cone Health sought to put him out of business for competitive reasons, but the facts alleged do not support a claim for unfair and deceptive trade practices. The only alleged facts to support Dr. Harwani's anticompetition theory is that the Realty Trust Group ("RTG"), Cone Health's real estate advisor, in two letters to Plaintiff expressed Cone Health's interest in purchasing the office building on Northwood Street (the "Northwood property") owned by Plaintiff. [Doc. #22 ¶¶ 108-113]. The text of the March 5, 2015 and August 29, 2018 letters referred to in the Amended Complaint (attached hereto as Ex. B), simply requests a meeting to discuss the "potential acquisition" of the Northwood property. [*See* Doc. #22 ¶ 165]. Even if Cone Health had a desire to develop all the Northwood/Elm St./Carolina St. area, [Doc. #22 ¶ 113], simply asking Dr. Harwani twice if he would be interested in selling his property cannot be an unfair or deceptive act.

Furthermore, the learned profession exception would bar Plaintiff's UDTP claim. The exemption for medical professionals has been interpreted broadly by our courts to include all aspects surrounding the operation and management of health facilities. *See Shelton v. Duke Univ. Health Sys., Inc.*, 179 N. C. App. 120, 126, 633 S.E.2d 113, 117 (2006); *Abram v. Charter Med. Corp. of Raleigh, Inc.*, 100 N.C. App. 718, 723, 398 S.E.2d 331, 334 (1990).

In a recent case, the North Carolina Business Court concluded that the learned profession exception covers conduct "affecting the professional services rendered by members of a learned profession" and "anticompetitive conduct involving commercial activity." *Se. Anesthesiology Consultants, PLLC v. Rose*, No. 17 CVS 9002, 2019 WL 5090364, at *9 (N.C. Super. Oct. 10, 2019). The North Carolina Court of Appeals has also specifically extended the learned profession exception to health care entities making decisions on medical staff privileges. *See Cameron*, 58 N.C App. at 446–47, 293 S.E.2d at 920–21. Here, the alleged attempt to ███ Dr. Harwani's privileges in order to purchase Dr. Harwani's property for the purpose of expanding Cone Health operations would certainly fall under this exemption, and thus is also subject to dismissal.

**D. The facts alleged do not support a claim for punitive damages.**

Under both state and federal pleading standards, Plaintiff has not sufficiently pled a claim for punitive damages. North Carolina law requires that a claim for punitive damages be "specifically stated" and that "the aggravating factor that supports the award for punitive damages shall be averred with particularity." N.C.G.S. § 1A-1(9)(k). Similarly, under Rule 9(g) of the Federal Rules of Civil Procedure, a claim for punitive damages must be specific, and a plaintiff cannot rest on conclusory allegations when discussing willful and malicious conduct. A statement that the defendant took action that was intentional, willful, or malicious is not enough. *Braswell v. Colonial Pipeline Co.,* 395 F.Supp.3d 641, 656-57 (M.D.N.C. 2019) ("Repeated conclusory allegations describing acts as willful and wanton . . . are insufficient to support a claim for punitive damages.").

24

The Amended Complaint contains a formulaic recitation of a multitude of buzz words related to punitive damages awards without alleging or pleading with particularity any facts that give rise to these claims. [Doc. #22 ¶173]. Plaintiff's claim does not meet the pleading requirements to withstand a motion to dismiss.

## **CONCLUSION**

Defendants respectfully request that the Court grant their Motion to Dismiss the Amended Complaint with prejudice.

This the 19th day of April, 2022.

/s/ Maureen Demarest Murray
Maureen Demarest Murray
N.C. State Bar No. 9195
Mmurray@foxrothschild.com
Lisa W. Arthur
N.C. State Bar No. 44184
Ellis W. Martin
N.C. State Bar No. 49380
Larthur@foxrothschild.com

FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
Greensboro, NC  27401
Telephone:  (336) 378-5200
Facsimile:  (336) 378-5400

*Attorneys for Defendants*